Plaintiff brought this suit to recover damages for personal injuries to himself which, he alleges, were caused by defendant's negligence in permitting a tree to fall upon him while he was riding on one of the flat-cars of its logging road in the discharge of his duties as its superintendent. We may well adopt, for the sake of deciding the case, the statement of some of the principal facts as contained in the brief of defendant's counsel, with quotations therein of a part of plaintiff's testimony, as follows: *Page 82 
"The defendant Stave and Timber Corporation was operating in a swamp in Washington County, getting logs off by use of a lumber road. The plaintiff was employed at a salary of $3,250 per year to supervise, manage, and control all its logging operations, and contracted to (39) render to the defendants the `best of his ability and experience necessary and proper thereto.' He employed all the hands, and their work and operation were directly and exclusively under his control. The work consisted of felling trees in the forest, cutting them into logs, constructing railroads, operating trains of cars on them for hauling the logs out, and shipping by the railroad to Norfolk. On the morning of the accident plaintiff directed his engineer to carry him and Mr. Crane into the woods on the train composed of the engine and one flat-car, he and Crane riding standing on the flat-car next behind the engine. On the return trip the train passed 140 feet from where two woodsmen were felling a tree. The train was moving at the rate of about 5 miles per hour. This tree was being felled nearly parallel with the track, but in its fall was caught and diverted by a gust of wind, lodged on the boughs of standing trees, rolled to the track and fell with its topmost boughs a few feet across the moving engine, and by the motion of the train plaintiff was swept by the limbs of the tree off the car and injured. There was no train crew except the engineer.
"In describing the course of the tree and his own conduct, plaintiff says:
"It was a funny falling tree. It made several dives, and that is the reason I did not make preparation to leave the car. . . . Some of the other trees were between the place where this tree stood and the railroad track.'
"Bloxham did not think of moving or getting off the car until the tree had changed its course at least twice; first on account of being caught in a guest of wind; second, by striking the boughs of another tree. He testified in this connection: `It was hard to tell which way it was going to fall until it got down in such a distance that it was too late for me without jumping off the side of the car.' In speaking of when he began to move, he said: `I say I saw it 10 or 15 feet above the car, falling towards the car, and I rushed towards the tail end of the car.'
"On cross-examination, Mr. Bloxham testified: `I said that I realized nothing until I heard some one make a scream or an alarm of some kind which indicated trouble to me. Then I looked up and saw the tree on its way to the ground. I do not know what it was, whether the wind, or what it was, that caught it and turned it towards the track, but the impression seemed to be that it was the wind that did it.'
"Again, on redirect examination, he said: `The tree looked to me as if it was falling not towards the track anyway. Suddenly it seemed to *Page 83 
take a whirl and come diagonally across towards the track. It seemed to strike some trees and bounce back."
"The engineer was in his cab, covered above and inclosed except by the windows. Plaintiff, standing up, uncovered, and with his view unobstructed, looking at the forest about him, heard a voice from (40) the front of the locomotive. Looking up, he saw the tree falling in a `funny' way. It made several dives, and that is the reason he didn't make any preparation to leave the car. It was hard to tell which way it was going to fall until it got down in such a distance, and then it was too late for him to jump without jumping off the side of the car. At this time the tree started to roll, and then struck in the branches of other trees and rolled. There is no allegation of negligence as to the felling of the tree."
This is defendants' statement:
There was evidence on the part of the defendants tending to show that the engineer was not in a position to see the tree from the engine as well as the plaintiff could from the flat-car, and that he could not have stopped the engine and car after he saw or could have seen the danger, in time to have prevented the injury, as he was sitting in the cab of the engine with his view obstructed by the roof and sides of the cab, his only means of observation being the windows; and there was further testimony from him that he had no time to stop the engine after he saw that it was falling, and that as soon as he saw it he did all that could be done to cut off the steam and stop the engine; that he had only a very few seconds to act, and that the engine was stopped as soon as possible by the exercise of care on his part.
The plaintiff, in his own behalf, testified, as stated in the charge with substantial correctness, as follows:
"In February, 1914, I was working on this 4,000-acre tract for the Stave and Timber Corporation, engaged in having logs cut for them; and I was down here every week. The contract between me and Arbuckle Bros. gave me $3,250 a year. I was hurt 4 February, 1914, on the 4,000-acre tract, on defendant's logging road. There was one locomotive and flat-car, and no crew on the engine or car except one engineer. The accident happened on the return trip. I and Mr. Crane were standing on the flat-car; some one began hollering, and I knew that something was wrong. I threw my eyes up and saw a tree falling. I was then 75 feet from it; glanced up ahead and through the trees. The tree was 14 inches big. I saw it 10 or 15 feet above the car, and then rushed towards the tail end; the tree caught me as it fell across the car; train didn't stop; no air-brakes were put on; don't know if any steam-brake was applied; I had nothing to do with selecting engine or the cars; I used what was furnished; I gave the engineer orders often to *Page 84 
look out for falling trees; I told the foreman to be careful about cutting logs; the engineer could have stopped in 20 feet." And again: "I made a request for an engine for a standard-gauge road that had a capacity to haul five to seven cars at one load. I and Folger talked about necessary machinery; I don't remember saying that I didn't name (41) them. The engineer was acting under my order to carry me down to a particular place when the trip was being made. I don't think the tree, if it fell as it started, would have crossed the track. The impression of the others there was that the wind whirled it. I believe that was the view that they took of it. It hit another tree falling. I guess the tree was cut 40 feet from the track. I did not see that stump. I yelled when I saw the tree coming. The engineer was in as good position as I was to see the tree when I first saw it. I had no time to give anybody orders. He had time to stop the engine, or reverse the engine. It was a minute or two — I would place it at two minutes." The witness then stated that he was estimating the time, and it may not be accurate. Questioned by defendant's counsel as to what he said when he was hurt, and as to whether he did not admit that the injury could not have been avoided and that the engineer was not to blame, he said that he could not remember about it, as he was then suffering from his injuries, which were very severe, and that "he did not think it fair to ask a question of that kind when he was in such a condition at that time, and that he would not swear whether he did or did not make the statement." There had been evidence that just after he was injured the plaintiff had stated that no one was to blame for the accident, and told the engineer that he was not responsible for it.
On redirect examination, plaintiff further testified: "It certainly did seem to whirl. I quickly saw the danger when I saw the tree. My God! I wanted to get off. If the engineer had stopped as soon as he could have seen the tree, there would have been no danger. I thought a gust of wind changed its course, but that is simply a guess. I did all I could. I was 10 or 12 feet from the engineer. I don't know how to handle an engine. I could not have given any order to the men cutting the tree.
There was other evidence tending to corroborate, more or less, the plaintiff and the engineer as witnesses.
The court, at defendant's request, instructed the jury as follows:
"1. If you find from the evidence that the engine and car were not properly equipped, but further find that by reason of the fact that the train was so light, or was moving so slow, that better brakes were not necessary, and that the train, as it was running, could have been stopped as quickly as the conditions required, and as it was necessary under the circumstances, with the brakes and equipment it did have, then the *Page 85 
failure to have different brakes did not as a matter of law produce the injury, and if you find no other negligence proximately causing the injury, you should answer the first three issues `No.'
"2. If you find from the evidence that the plaintiff did not have the selection of the engine and car, but that they were selected and sent out to him by the defendant, yet if you further find that the plaintiff, as supervisor of the woods and works, went on using them, knowing (42) of their defect of equipment, if any, or having opportunity in the exercise of reasonable care to know of them, even though this defect caused the injury, you should answer the fourth issue `Yes.'
"3. Plaintiff contends that the defendants were negligent in that the engineman failed to stop the train as quickly as he could and should have done, and that this negligence was the proximate cause, among other things, of the injury. In this connection I charge you that it was the duty of the engineman at all times to keep a diligent lookout in front of his engine, and in the scope and observation of that lookout to see and observe such things as reasonably and naturally came within, or should have come within, his view, and to govern and control his engine in respect to the same; and if you find from the evidence that in the exercise of this duty he did not see and could not, by reasonable care, have seen the tree as it started to fall and was falling, his failure to see it and to stop his engine on account of it was not the proximate cause of the injury, and as to this feature of the case — that is to say, in the absence of other negligence proximate to the injury — you will answer the first three issues `No.'
"4. The defendants contend that the engineman was keeping a lookout in front of his engine, and in this lookout and view it was not possible for him to have seen the top of the tree at the time it started to fall, or while it was falling, because of the cab on the side and above him, and that he did not see it, and, therefore, did not and could not see the impending danger; and I charge you if you find this to be the fact, you will answer the first three issues `No.'
"5. The defendants contend further that even if the engineman had seen the tree when it started to fall, and while it was falling, it was impossible for him to have stopped his train, whatever appliances he might have had on it, before the tree fell on the train; that it was all done so quickly that it was impossible to escape the tree, and that if he had stopped the train suddenly at the time he saw, or by reasonable diligence could have seen, the tree falling, it would still have fallen on the train. In this connection I charge you that if the engineman saw the tree falling at such a time, in such a condition, and under such circumstances as caused him to believe, as a reasonable man, that if he brought the engine to a sudden stop it would fall on the cab and injure *Page 86 
him, it was not his duty to stop the train and receive the injury himself under such circumstances; and the accident was what the law calls an unavoidable accident, from which no liability flows; and if you find these to be the facts, you will answer the first three issues `No.'
"6. It was the duty of the engineman to exercise such care as a reasonably careful and prudent man would have exercised under the same circumstances, and no more; and if he saw the tree falling so near (43) to the engine and so fast that as a reasonably prudent man it appeared to him that if he stopped the engine suddenly he would receive an injury himself, and in the exercise of proper care could not have seen it sooner; and if the engineman knew, at the time, that the plaintiff was behind on an open car, and had as good and sufficient view of the tree and opportunity to see and appreciate the danger as he had, and by tree and opportunity to see and appreciate the danger as he had, and by reason of the slow movement of the train could jump off and protect himself, it was not his duty to bring the train to a sudden stop under circumstances that led him to believe he would receive the injury himself and was more likely to receive it than the plaintiff; and if you find this state of facts to have existed, and no other cause proximately produced the injury, you will answer the first three issues `No.'
"7. If the engineman was exercising reasonable care in looking out for danger in front of him, and did not see the tree until he had good reason to believe, and did believe, that the tree would fall on his cab and injure him if he came to a sudden stop, he had the right, in the exercise of his own right of self-preservation, to refuse to stop the engine, and it was not his duty to do so; and if this state of facts proximately caused the injury, you will answer the first three issues `No.'"
The jury under the evidence and charge of the court returned the following verdict:
1. Was the plaintiff Bloxham injured by the negligence of defendant The Stave and Timber Corporation, as alleged in complaint? Answer: "Yes."
2. Was the plaintiff Bloxham injured by the negligence of the defendant M. E. Goetzinger, as alleged in complaint? Answer: "Yes."
3. Was the plaintiff Bloxham injured by the negligence of the defendants Arbuckle Brothers, and the individuals composing said firm, as alleged in complaint? Answer: "Yes."
4. Did the plaintiff Alfred Bloxham by his own negligence contribute to and cause the injuries he received, if any? Answer: "No."
5. Were the acts, if any, which produced injury to plaintiff Bloxham caused by risks which Bloxham under his employment agreed to assume? Answer: "No."
6. What amount, if any, is the plaintiff Bloxham entitled to recover of defendants by whose negligence he was injured as alleged? Answer: "$8,000." *Page 87 
Judgment was entered thereon, and defendant appealed.
Some of the assignments of error are directed to the absence of evidence to show any negligence on the part of defendant, arising from the failure of the engineer to (44) see the falling tree in time to have stopped his engine and prevented the injury, and to the fact that plaintiff was in full charge and control of the defendants' business and logging operations, including the running of the engine and cars, and therefore assumed all risks of injury therefrom; and, further, that there is no evidence to support the finding of the jury that plaintiff was injured by defendants' negligence. A careful review of the record will show that these contentions should not be sustained, as there was evidence which tended to show that the defendants were not legally in fault, and, therefore, not responsible for this deplorable occurrence, which has shattered the plaintiff's health and subjected him to great and constant suffering; and there was also evidence which tended to show the contrary, and that the injury was directly traceable to the defendants' negligence. In this state of the proof the case was one for the jury, and we are of the opinion that the charge of the court was not only fair and impartial, but that it contained a full explanation of the law applicable to the facts as they might be found by the jury, and in many respects it was exceedingly favorable to the defendants.
It is true that the statements made by the plaintiff just after he was injured, if they were true, exonerated the defendants from any blame; but they were made, as the plaintiff testified, when he was suffering greatly, both in mind and body, from his injuries. He described his condition as follows: "I went to Norfolk and had Dr. Seelinger there. It is impossible for me to describe how I felt. I was a total wreck, is all I can say. My left arm was broken in two places, and there were two dislocations. The bones of the hand were driven back into the wrist of both hands. I had a bruise on my forehead over the left eye, and I had a bruise on the back of my head. I feel both of those physical injuries now. In regard to the arm, I always have a pain there. Sometimes it is so bad I can't sleep with it, and sometimes it does not discommode me, as I get used to it. Witnessillustrates what use he has of the arm by moving it. I can raise it higher than that by the shoulder. I was confined to my home by this accident about a month, I think, the first time. I can't tell you to the day. Then I tried to go out and do something, but it was just misery." *Page 88 
It is not to be expected that a man under such distressing circumstances can describe an occurrence as well and with as clear and retentive a memory as when his faculties and senses are either restored or in a more normal condition. But, however this may be, the whole matter, including the conflict and discrepancies in the evidence, was for the jury. How can we say, as a matter of law, that he told the truth the first time, and not the second, or even that what is attributed to him really agrees with the facts? The case of Dail v. Taylor, 151 N.C. 284, (45) accurately states the law in respect to such a conflict of evidence. Justice Hoke there says: "While we hold this to be a correct position as to mere proof of the occurrence, we are of opinion that there was error in sustaining defendant's motion for nonsuit, for the reason that there was additional testimony tending to show a want of proper care on the part of the defendant. C. S. Weslett testified: `That all along for the last two years witness had seen these coca-cola bottles from defendant's works explode in the store.' True, the witness seems subsequently to have given evidence qualifying this statement; but we are not at liberty to select the more favorable portion of a witness's statement and act on it for defendant's benefit. In a motion of this kind we have repeatedly held that the evidence making for plaintiff's claim must be taken as true and interpreted in the light most favorable for him; and, applying this rule, we think the additional testimony as indicated, with the evidence describing the occurrence, presents a case which requires that the issues raised should be submitted to the jury, and that the order directing a nonsuit was erroneous."
The charge of the court was singularly responsive to the requests of the defendants in respect to the question of negligence, and it substantially submitted to the jury for their consideration every phase of the law embraced by them, and almost in their very language. There was no change of expression, as will be seen, which affected the substance of them. This brought the case to the simple question as to which version of the facts the jury would accept. It must not be forgotten that there was testimony that the plaintiff halloed to the engineer, as did also another person, and also that the engineer had been instructed to look out for falling trees, and he testified that he looked immediately after the alarm was given.
It is urged by the defendants that they are not responsible to plaintiff, as their vice principal, for the negligence of the engineer, one of his subordinates, because, as held in McGrory v. Co., 23 L.R.A. (N.S.), 301, such act of negligence on the part of defendants' servant is one of the ordinary risks assumed by the plaintiff when he entered their service. But this leaves out of consideration the fact that this common-law rule no longer is in force with us, as the Legislature has *Page 89 
abrogated it, and enacted that assumption of risks shall not be a defense for a railroad company in an action by one of its employees for damages on account of injuries sustained by reason of the negligence of another employee. Revisal, sec. 2646; Fitzgerald v. R. R., 141 N.C. 530;Coley v. R. R., 128 N.C. 534, and 129 N.C. 407. It was held in the Fitzgerald case that "The statute known as the Fellow-servant Act, published as chapter 56, Private Laws 1897, where the same applies, has the effect of making all coemployees of railroad companies agents and vice principals of the company so far as fixing the company with responsibility for their negligence is concerned. While commonly (46) spoken of as the `Fellow-servant Act,' it is entitled `An Act to Prescribe the Liability of Railroads in Certain Cases,' and it operates on all employees of the company, whether in superior, equal or subordinate positions." The statute also applies to logging roads. Hemphill v.Lumber Co., 141 N.C. 487; Hairston v. Leather Co., 143 N.C. 512;Bird v. Leather Co., ibid, 283; Roberson v. Lumber Co., 154 N.C. 328. The defense of assumption of risks is not, therefore, available to the defendants. The jury have properly found that plaintiff was not guilty of contributory negligence, so that these two defenses have both been disposed of, one by the law and the other by the jury upon the evidence and correct instructions of the court.
The plaintiff testified that the engineer could have taken in the exact situation was well as he could, and that with proper attention and care the engine could have been brought to a full stop by the engineer in time for plaintiff to have escaped the injury.
The shifting of the winds was not the proximate cause of the injury. Although the act of God, for which they are not responsible, as contended by defendants, it is considered to be the remote cause if, after the winds changed in direction, and the tree had started in its course toward the car, the engineer had a fair opportunity to stop the engine, after becoming aware of the danger. If these are the facts, the injury to plaintiff was not the result of an accident, but of direct causation.
In determining whether the engineer was guilty of negligence, the situation and his surroundings were proper subjects for the jury to consider. If he was suddenly confronted by a serious emergency or peril, the law required of him only the care which a man of ordinary prudence would have exercised in the same circumstances, and makes proper allowance for excitement, terror, or the instinct of self-preservation. But this was all fully explained to the jury, and if on any phase of the case the defendants desired more specific instructions, they should have asked for them. Simmons v. Davenport, 140 N.C. 407.
There are numerous positions taken by the defendants, in their brief, some of them relating to matters presented for the first time in the *Page 90 
assignments for error, which is too late. (Harrison v. Dill, 169 N.C. 542), and others which are really subsidiary to those we have already discussed, and are controlled by the general principles we have stated. The charge of the court covering the entire case, and notwithstanding the attack made upon it, which we think is groundless, it was eminently fair and just to both parties and characterized by the closest attention even to the details of the evidence. There was nothing in it of which defendants can justly complain as being an intimation of opinion upon the facts, but, on the contrary, it has the merit of being an unusually clear, strong, and comprehensive review of the case, and such as no (47) jury could misunderstand. It is exceptionally free from anything of a foreign nature, and is a remarkably plain, direct, and forceful statement of the facts and the law of the case, such as is calculated to bring the jury to a fair and just understanding of the issues.
As to the liability of the defendants other than the corporation, it is sufficient to say that there was evidence for the jury to consider, and which was properly left to them. The pleading in the other suit mentioned was competent as a declaration of the party who is a defendant in this action, and it makes no difference that the other suit was not between the parties in this one. We find the rule thus stated in 1 Enc. of Evidence, p. 425: "It is not necessary to the competency of a pleading, as an admission against the party, that it be one filed in an action between the same parties. A pleading filed in any action is competent against the party if he signed it or otherwise acquiesced in the statements contained in it, if such statements are material and otherwise competent as evidence in the cause on trial, not by way of estoppel, but as evidence, open to rebuttal, that he admitted such facts." The same principle was applied, at this term, in Alsworth v. Cedar Works, ante, 17. See, also, Cummings v. Hoffman,113 N.C. 267. It is not so much the time, place, or manner of making a declaration or admission as the fact of the admission, its substance, and its relevancy to the questions in dispute. These matters were all fully and sufficiently explained to the jury. The statement in the letter was not conclusive, but open to contradiction by direct or circumstantial evidence, and it was for the jury to say whether there had been any substantial change in the relations of the individual defendants to the property, and the business in which the plaintiff was employed at the time of his injury.
We have considered this case with great pains and some elaboration, because of the length of the record and the many and important questions involved; but upon a careful review of it we conclude that it has been correctly tried.
No error. *Page 91 
 Cited: Goodman v. Power Co., 174 N.C. 664 (3c); Mumpower v. R. R.,174 N.C. 744 (4c); Smith v. Comrs., 176 N.C. 469 (6c); Midgett v. Mfg. Co.,180 N.C. 25 (31); Richardson v. Cotton Mills, 189 N.C. 654 (3c); Ledford v.Power Co., 194 N.C. 102 (7c); Morris v. Bogue Corp., 194 N.C. 280 (7c);Hotel Corp. v. Dixon, 196 N.C. 266 (7c).