W. C. GOODMAN v. TALLAHASSEE POWER COMPANY.

(Filed 5 December, 1917.)

1. Railroads—Evidence—Fellow-servant Act—Negligence.

A standard-gauge railroad track, over which defendant's contractor hauls material to be used in building a large manufacturing plant for defendant by means of a "dinkey," and over which the defendant uses a "speeder," the size of a hand-car and operated by gasoline, to carry its employees to and from their work, is a railroad, in contemplation of the Fellow-servant Act; and where an employee has been injured by the negligence of the one operating the speeder, the defense that the injury was caused by the alleged negligence of a fellow-servant and no recovery can be had, is not available. *Twiddy v. L. Co.,* 154 N. C., 237, cited and distinguished.

2. Instructions—Fellow-servant Act—Appeal and Error—Harmless Error.

Where the defendant is a railroad operated within the meaning of the Fellow-servant Act, an erroneous instruction on the issue as to whether the plaintiff and the one whose negligence caused the alleged injury were fellow-servants is harmless, if erroneous.

3. Evidence—Re-examination—Cross-examination—Appeal and Error—Objections and Exceptions.

Defendant's exception to the evidence on reëxamination, which is substantially the same as that given by him on cross-examination, cannot be sustained on appeal.

APPEAL by defendant from *Cline, J.,* at August Term, 1917, of CABARRUS.

This is an action to recover damages for personal injury.

The plaintiff, W. C. Goodman, was working for the defendant Tallahassee Power Company as an electrical helper at Badin, N. C., on or about 22 March, 1916, and had been so working for some time prior thereto.

On that day, he, with two other electricians, went out to do some work. They went to their work on what is known as a "speeder," which was operated on the railroad track built by the defendant. Said track was used by the defendant for the purpose of hauling material and supplies of all kinds from the railroad at Whitney to Badin, where the defendant was erecting its factories and other plants for the manufacture of aluminum. Said track was not used as a public carrier for either freight or passengers at the time of the injury, but was so used in June thereafter. The Hardaway Contracting Company, contractor for the defendant, was using its dinkeys to haul in the material used in the construction of these plants. The speeder was a small four-wheeled car, about the size of an ordinary hand-car, was propelled by gasoline, and was used on said track by the employees of the company in going from place to place in discharge of their duties. The speeder was operated by one of the employees of the company, and he took the plaintiff and others out to their place of work on the day of the accident, and in the afternoon was bringing them in. When the speeder was crossing the road-crossing, north of the defendant's plant, it was run into by an automobile, which knocked the speeder a distance of some 10 feet and off the track. The plaintiff, who was one of the occupants of the speeder at the time, was injured in his foot, and has suffered continuously since that time. He alleges that the accident was due to the carelessness of the operator of the speeder in not sounding the gong, or slowing up, or stopping the speeder before entering on said crossing, and he introduced evidence tending to sustain his contention.

The defendant denied that it was negligent, and alleged that if there was negligence it was the negligence of a fellow-servant, for which it was not responsible.

The track on which the speeder was running was standard-gauge, had heavy rails, and trains pulled by steam locomotives ran over it, carrying material. It was constructed so that it could be used as a carrier of freight and passengers, and began to be operated as such in June, 1916.

Seaford, a witness for defendant, gives the following account of the employment of the plaintiff and of himself: "At the time of the accident I was machinist and operator of the speeder. I repaired and kept speeder in operation. I worked in the shop when the speeder was not running, and when the speeder was running I ran it. Mr. Hagadon was the master mechanic in the shop. Goodman worked in the electrical department, in the same building. Mr. Bears was the head of that department. Hagadon did not have immediate control over Goodman. I had instructions from Mr. Hagadon that whenever I was on the speeder I was subject to the electrical department's orders. When Goodman told me to stop, I had to stop, absolutely, and when he told me to start, I

started. When the electrical department is out together, they generally all wanted to go to the same place and stop at the same place. They were all three at Whitney, and wanted to go to Badin, and I carried them to Badin, or part of the way. They all worked in the electrical department, except me. When they all quit work and wanted to go back, I had to take them. If he said he wanted to go back at 3:30, I would be there at 3:30. I was obeying the orders of my boss, and pleasing the electrical department also."

The jury returned the following verdict:

1. Was the plaintiff injured by the negligence of the defendant company, as alleged in the complaint? Answer: Yes.

2. Was the injury to the plaintiff caused by the negligence of a fellow-servant, as alleged in the answer? Answer: No.

3. What damages, if any, is the plaintiff entitled to recover? ·Answer: $4,000.

His Honor instructed the jury to answer the second issue "No," if they believed the evidence, and the defendant excepted.

Judgment upon the verdict in favor of the plaintiff, and defendant appealed.

*F. I. Osborne, R. L. Brown, and W. G. Means for plaintiff.*
*L. T. Hartsell and R. L. Smith for defendant.*

ALLEN, J. Conceding that the plaintiff and Seaford, the driver of the speeder, were fellow-servants, as the defendant contends, the defense that the defendant is not responsible for an injury caused by the negligence of a fellow-servant cannot avail the defendant if it was operating a railroad at the time of the injury to the plaintiff, within the meaning of section 2646 of the Revisal, which abolishes the doctrine of fellow-servants as to railroads, and provides that "Any servant or employee of any railroad company operating in this State who shall suffer injury to his person . . . by the negligence . . . of any other servant, employee, or agent of the company . . . shall be entitled to maintain an action against the company."

The statute was considered in *Hemphill v. Lumber Co.,* 141 N. C., 489, and it was then held that it included logging roads, and the definition given to the term "railroads," in *Schus v. Power Co.,* 85 Minn., 447, was adopted, as follows:

"In *Schus v. Powers-Simpson Co.,* 69 L. R. A., 887; 85 Minn., 447, this point was raised under the Minnesota 'Fellow-servant Act,' which is very similar to that in this State, and the Court held that the words, 'every railroad corporation owning or operating a railroad in this State,' embraced a 'logging road'; that though it is not a common carrier of

freight and passengers, its employees engaged in the operation of its trains are exposed to the same dangers and risks as are employees of railroads operating as common carriers, and come within the spirit and intent of the act, and that the wider signification of the word 'railroad,' meaning any road operated by steam or electricity, on rails, was intended by the Legislature.

"Both street railways and logging roads are railroads—*i. e.,* roads whose operations are conducted by the use of rails—and come within the general term, 'railroads'—certainly within the meaning of the Fellow-servant Act, which sought to protect all employees engaged in this dangerous avocation, by requiring safe ways, machinery, and appliances, and taking away from such companies the defense that an employee had been injured or killed by the negligence of a fellow-servant."

In the subsequent case of *Carter v. R. R.,* 160 N.C., 10, the principle was affirmed, and the Court then said: "In construing that act (Revisal, sec. 2646) and its similar phraseology, we held that logging roads are railroads, within the meaning of the act, and that the term 'railroad' embraced any road operated by steam or electricity, on rails."

The *Hemphill case* has been approved sixteen times, the latest reference to it being in *Buckner v. R. R.,* 164 N. C., 204; *McDonald v. R. R.,* 165 N. C., 625; *Bloxham v. Timber Co.,* 172 N. C., 46, and we are not inclined to disturb it, as roads "operated by steam or electricity, on rails," come within the language of the statute, and they are within its spirit, which is to protect employees engaged in a dangerous service. Indeed, the employees of railroads which are not public-service corporations are frequently subjected to greater danger because of defective appliances and the absence of supervision by officers of the State.

The evidence clearly brings the defendant within the principle, as it shows that the road operated by the defendant was standard-gauge, had heavy rails, and that a locomotive hauled trains over it, carrying all kinds of heavy material.

It follows, therefore, if the plaintiff and Seaford were fellow-servants, there was no prejudicial error in the instruction to the jury, as the defendant, being a railroad, operating in this State, could not have the benefit of the defense that the plaintiff was injured by the negligence of a fellow-servant.

The case of *Twiddy v. L. Co.,* 154 N. C., 237, has no application to the case before us. In that case the plaintiff was in a separate department and had no connection with the operation of the road, while in the present case the plaintiff and Seaford were together, operating the speeder, the plaintiff giving directions and Seaford driving it.

We therefore conclude, there is no reversible error in the charge.

There is also an exception to evidence, which we have considered, and find without merit.

There is no substantial difference between the answer of the witness to the questions objected to on reëxamination and his testimony on cross-examination.

No error.