LEONORA MUMPOWER v. BLACK MOUNTAIN RAILWAY COMPANY.

(Filed 12 December, 1917.)

**1. Railroads—Negligence—Evidence—Questions for Jury—Trials.**

Where there is evidence tending to show that the plaintiff's intestate, an engineer on defendant's locomotive, was killed by a runaway car from defendant's siding, on a steep mountain grade, coming into collision with his train on the main line; that the car got away from a shipper on the siding when moving it according to an established custom; that the brake-shoes on this car were insufficient, and the defendant had provided a defective derailer, which failed to work, and that the intestate's train was running backward for the failure of defendant to provide a "wye" or turn-table, and without proper lookout to warn him of the danger, which he could probably have averted by jumping, had the train been properly run with the locomotive ahead, or upon warning given: *Held,* sufficient, upon the issue of defendant's actionable negligence.

**2. Railroads—Negligence—Collisions—Presumptions—Burden of Proof.**

The death of plaintiff's intestate, an engineer on defendant's locomotive, caused by a collision with another car running wild into his train from a siding, raises a presumption of defendant's negligence, with the burden on defendant to disprove it, and carries the case to the jury.

**3. Negligence—Concurring Causes—Damages.**

Where a negligent act, committed by a shipper within a custom permitted by the railroad company, together with the negligent acts of the railroad, concurrently and proximately cause an injury to the latter's employee, engaged at the time within the scope of his employment, an action may be maintained against the railroad for the entire damage suffered.

APPEAL by defendant from *Lane, J.,* at March Term, 1917, of YANCEY.

The plaintiff's intestate was a fireman upon defendant's railroad. At Summit Cut, near Burnsville, the defendant had built a side-track about 300 yards long, on a very steep grade. If a car upon said side-track got loose it would run down said side-track and onto the main line for more than a mile. The railroad runs from Kona, in Mitchell County, to Escota, in Yancey, about 22 miles. The roadbed is very steep and crooked. The defendant failed to put in a turn-table or "Y," by reason of which at that time the engine had to be run backward, with the tender in front, from Escota to Kona.

The side-track at Summit Cut was much used by English, a lumber dealer, as a loading and shipping point. He had built a dock along this side-track to store lumber on. The custom had prevailed, ever since this road was built, for shippers to move cars on the side-tracks, which were numerous on this road, for storing and shipping lumber.

The defendant had a defective derailer on the side-track at Summit Cut, and about a week before the death of plaintiff's intestate a car in bad order and with defective brakes had been placed on this side-track.

The defendant, in repairing this car, left it with seven brake-shoes instead of eight.

On the day the plaintiff's intestate was killed, the engine was being operated backward up the hill, towards the side-track. English attempted to move a car that was on his side-track, but, owing to its defective brakes, he was unable to control it, and, the derailer also being defective, the car ran out on the main line and down it, at an ungovernable speed. The engine being operated backwards, the engineer, who was on the other side, could not see the car coming. If his engine had been at the head of the train he could have seen the wild car coming, and could have jumped. The defendant had no lookout on the engine, nor on the leading car, as the train was backing up the hill. The runaway car collided with the train, killed the plaintiff's intestate and seriously injured the engineer.

Verdict and judgment for the plaintiff. Defendant appealed.

*Merrimon, Adams & Johnston and Charles Hutchins for plaintiff.*
*H. G. Morrison, J. J. McLauchlin, J. Bis. Ray, and Pless & Winborne for defendant.*

CLARK, C. J. There was evidence of negligence, in that the defendant had no lookout on the rear end of the train, which was moving backward. *Lloyd v. R. R.,* 118 N. C., 1010; *Purnell v. R. R.,* 122 N. C., 845, and numerous cases cited to these cases in the Anno. Ed. In any view of the case, there was not a sufficient lookout, as required by *Arrowood v. R. R.,* 126 N. C., 630.

The evidence of the defective derailer was also evidence of negligence sufficient to go to the jury. Evidence was competent as to the custom prevailing on the railroad for shippers, like Mack English, to shift the cars on the side-track, both before and after they were loaded, to meet their convenience, and to show that this was done with the implied knowledge and consent of the company. *Bradley v. R. R.,* 126 N. C., 735; *Kesterson v. R. R.,* 146 N. C., 276; *Whitehurst v. R. R.,* 160 N. C., 1; *Greer v. Lumber Co.,* 161 N. C., 144, and many others.

The death of plaintiff's intestate was caused by a collision, and this raised the presumption of negligence on the part of the carrier, and the burden was on the defendant to rebut this presumption, which carried the case to the jury. *Stewart v. R. R.,* 137 N. C., 687; *Wright v. R. R.,* 127 N. C., 225.

Though the track was very steep and crooked, the defendant had failed to build any turntable or "Y," by which the engine would have been turned around and operated head first. There was evidence that if the engine had been operated head first, the engineer could have seen the wild car in time to have avoided injury, or at least to jump and save him-

self. There was also evidence that the derailer, which should have thrown a runaway car off the track, was visibly defective, and that the loose car did not even hesitate as it went over it.

If there was negligence of English in shifting the cars on the track, it was in accordance, according to the evidence, with the custom of this defendant at the side-tracks, and therefore his shifting it was with the knowledge and consent of the company. If the negligence of English started the runaway car, it concurred with and contributed to the negligence of the company, which permitted him to do this, and which, by reason of running the train backward without a lookout at that end, and without a sufficient derailer, which should have thrown the car before it reached the main line, caused the death of plaintiff's intestate, as the jury found.

In *Ridge v. R. R.,* 167 N. C., 525, *Walker, J.,* said: "Where there are two causes coöperating to produce an injury, one of which is attributable to the defendant's negligence, the latter becomes liable, if together they are the proximate cause of the injury, or if defendant's negligence is such proximate cause. Where the master's negligence contributes to the result, although there may be a coöperating cause not due to the servant's act, the law will not undertake to apportion the liability, but will hold him responsible to the servant in the same degree and with the same consequences as if his negligence had been the sole cause of the injury."

After English had released the car, the injury to the plaintiff would not have occurred except for the negligence of the defendant in the several particulars above stated. The case is very much like *Bloxam v. Timber Co.,* 172 N. C., 46, where *Walker, J.,* said: "The shifting of the winds is not the proximate cause of the injury. Although the act of God, for which they are not responsible, as contended by the defendants, is considered to be the remote cause, if, after the winds changed in direction and the tree started in its course toward the car, the engineer had a fair opportunity to stop the engine after becoming aware of the danger, if these are the facts, the injury to the plaintiff was not the result of an accident, but of direct causation."

In *Hudson v. R. R.,* 142 N. C., 204, it is said: "In order, however, that a party may be liable for negligence, it is not necessary that he should have contemplated or even been able to anticipate the particular consequences which ensued or the precise injuries sustained by the plaintiff. It is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his act of omission, or that consequences of a generally injurious nature might have been expected."

The defendant, for divers reasons, should have anticipated that some injury would occur from its custom in permitting shippers to move cars

on side-tracks, because of the fact that it had left this car on a steep side-track, in a defective condition, with only seven brake-shoes instead of eight, and it knew that if the car broke loose, the derailer, which, if in good condition, would have thrown the runaway car from the track before it reached the main line, was in a defective condition, so that it did not operate. As to exception 28, while the court did not use the exact words as to the burden of proof, as requested, he did charge as follows: "Was the plaintiff's intestate injured and killed by the negligence of the defendant, as alleged? The burden of this issue is upon the plaintiff to satisfy you, by the greater weight or the preponderance of the evidence, that the plaintiff's intestate was killed by the negligence of the defendant."

The refusal of the court of an amendment to plead the Federal Employer's Liability Act was a matter within its discretion. Revisal, 507; *Johnson v. Telephone Co.,* 171 N. C., 130. Besides, as assumption of risk is not shown or pleaded, we cannot see that it would have had any bearing. The plaintiff had alleged, and the answer had admitted, that it was an intrastate railway. *Flemming v. R. R.,* 160 N. C., 196. The defendant, moreover, had repeatedly announced its readiness for trial upon the pleadings, which admitted that it was engaged in intrastate business. *R. R. v. Mimms,* 242 U. S., 532.

The defendant claims that its railroad was built principally as a logging road. It is alleged in the pleading, and admitted, that it is a common carrier; and the fact, if such, that it is a logging railroad, built through a rough country, will not avoid its liability for negligence as shown in this case. Even if a logging road, it is liable to its employees in the same standard of duty as any railroad system. *Buchanan v. Lumber Co.,* 168 N. C., 40; *Hemphill v. Lumber Co.,* 141 N. C., 487; *Simpson v. Lumber Co.,* 130 N. C., 96; *Craft v. Timber Co.,* 132 N. C., 156.

After carefully considering the whole case, and each exception in detail, we find

No error.