CORPORATION COMMISSION EX REL. RALEIGH GRANITE COMPANY v. ATLANTIC COAST LINE RAILROAD COMPANY ET AL.

(Filed 19 March, 1924.)

**Corporation Commission — Railroads — Carriers—Lumber Companies — Statutes—Rates—Joint Rates.**

> A lumber company, chartered and organized for the purpose of transporting its own products, may be created a limited public carrier by the order of the Corporation Commission, under the provisions of C. S., 1039; and when it is of standard gauge and of sufficient equipment and extensiveness to affect the interest of the public, the Commission may make a valid order establishing a joint rate of transportation in the same cars between it and a connecting common carrier by rail to points beyond the initial road. C. S., 1071.

APPEAL by defendant from *Calvert, J.,* at October Term, 1923, of WAKE.

The Corporation Commission, on 7 August, 1923, passed an order establishing joint rates on crushed stone from Barham's Siding, on the Montgomery Lumber Company's railroad, to all stations over the Atlantic Coast Line Railroad.

On appeal from such order, the court found the following facts:

"The Raleigh Granite Company owns a granite quarry near Rolesville, in Wake County. This granite is useful as building stone, and

also for curbing, paving blocks, and crushed stone for concrete work. The only transportation line reaching this quarry, which is a great natural exposure of granite, is the Montgomery Lumber Company Railroad. The Raleigh Granite Company has built a connecting track from the Montgomery Lumber Company Railroad, at Barham's Siding, to the stone quarry, and has installed a crushing plant with a capacity of ten cars daily. It delivers this stone from its quarry to the Montgomery Lumber Company Railroad in carload lots at Barham's Siding. There the lumber company railroad takes it up and hauls it to Spring Hope, N. C., where it is delivered in carload lots to the Atlantic Coast Line Railroad for transportation to points beyond Spring Hope.

"In this transportation, previous to the order of the Corporation Commission, the lumber company railroad charged local rates to Spring Hope, and the Atlantic Coast Line Railroad charged local rates from Spring Hope to destination of the stone. These local rates are so high that when the present contracts of the Raleigh Granite Company are completed, all the equipment of the granite company will have to be removed and the quarry abandoned for lack of reasonable rates to points of consumption in North Carolina beyond Spring Hope and over the Atlantic Coast Line Railroad.

"The Montgomery Lumber Company is a North Carolina corporation, duly incorporated under the laws of the State, with authority to purchase timber tracts or timber rights to manufacture the same into lumber, and to do all those things necessary and convenient for the effectuation of those purposes. It is further authorized to purchase or construct tram roads for the transportation of its lumber and timber. The charter does not specifically confer upon it the power of eminent domain or authority to become a common carrier. The Corporation Commission, however, by an order dated 21 March, 1916, under authority of section 1039 of the Consolidated Statutes, granted to the lumber company the privilege to transport all kinds of commodities other than their own and passengers, and to charge therefor rates shown in tariff filed with and approved by the Commission. Since this order the lumber company has transported both freight and passengers along this line.

"The road of the lumber company is of standard gauge and oak ties and its trestles are standard. The iron rails are fifty-pound rails, same size as that operated by the Atlantic Coast Line Railroad on its Spring Hope branch until recently. The road is being maintained as a standard road. The lumber company owns two 75-ton Baldwin locomotives and two 60-ton locomotives for lighter work. In addition to its logging equipment it has six flat cars, twenty gondolas, one box car and one passenger car, which equipment never leaves the tracks of the Montgomery Lumber Company. In the transportation of the product of

the granite company from Barham's Siding on out upon the Atlantic Coast Line. Railroad the latter furnishes the cars, which are loaded at the quarry by the granite company and transported by the lumber company to Spring Hope, where the lumber company delivers the cars upon the track of the Atlantic Coast Line, they there being taken up by the Atlantic Coast Line and carried to their destination without any transfer cost or any unloading of the cars. In this way the lumber company delivers to the Atlantic Coast Line at Spring Hope, on an average, five carloads of stone from the granite company per day.

"The application of the granite company for joint rates over these two roads was confined to the product of its quarry, and the order of the Corporation Commission extended no further than the allowance of joint rates on this particular commodity.

"The Atlantic Coast Line Railroad Company has no joint mileage rates in effect with any tram road or railroad authorized by the Corporation Commission to do a limited business in the transportation of freight and passengers, nor has such railroad company any joint mileage scale with any of the short lines in the State of North Carolina except the Randolph and Cumberland. The Randolph and Cumberland Railroad is not a direct connection with the A. C. L. R. R. Co. and the joint scale with that railroad was put in without the approval of the A. C. L. The Randolph and Cumberland Railroad Company is a short-line carrier. The joint rates put into effect upon that railroad related only to crushed stone, gravel and sand. The Montgomery Lumber Company has not published in its tariff any rate on stone from Barham's Siding to Spring Hope, but a rate of sixty cents per ton has been charged, based on an application to the Corporation Commission and pending decision by the Commission on that application.

"The lumber company does not issue any through bills of lading from points on its line to points on the Atlantic Coast Line Railroad. All traffic from points on the road of the lumber company is delivered to the Atlantic Coast Line Railroad at Spring Hope as local Spring Hope shipments, and shipments that come into Spring Hope from points on the A. C. L. Railroad to points reached by the lumber company railroad are delivered by the Atlantic Coast Line Railroad to the lumber company railroad at Spring Hope. The lumber company does not issue through bills of lading, and shipments from points on the lumber company's line that are intended for transportation beyond Spring Hope are delivered to the A. C. L. Railroad at Spring Hope by the lumber company acting as agent for the shipper. The lumber company has only one station between terminals, which is at Bunn, N. C., and it there maintains its only station agent. It has a terminal at Barham's Siding, but has no agent there. The Atlantic Coast Line

Railroad has a contract with the Montgomery Lumber Company covering the hauling on its line of the Atlantic Coast Line Railroad Company's equipment. Shipments going to points on the Montgomery Lumber Company's line from points on the A. C. L. Railroad are billed to Spring Hope, N. C. The shipper of any commodity except crushed stone from points on the lumber company's line to points on the A. C. L. now pays full local rates to Spring Hope, and from Spring Hope to points on the Atlantic Coast Line, and will continue to pay such full local rates if the order of the Corporation Commission in this case becomes effective.

There is no evidence in the case that if the Corporation Commission has authority to make joint rates between a lumber road of the class to which the Montgomery Lumber Company's railroad belongs and a trunk line, that the rates established by the Corporation Commission on this application are confiscatory.

Upon motion of the Attorney-General, it is thereupon ordered and adjudged:

"(1) That the said Montgomery Lumber Company is a common carrier of goods and freight.

"(2) That the Corporation Commission had legal power and authority to make the joint rates in this proceeding.

"(3) That said joint rates are reasonable in amount.

"(4) That because they apply only to the product of the Raleigh Granite Company, and do not apply to other classes of freight hauled by the Montgomery Lumber Company and delivered to the Atlantic Coast Line at Spring Hope, does not create any illegal or unconstitutional discrimination against other classes of freight, the nature of the commodity itself being such as to justify the classification.

"(5) That the order of the Corporation Commission herein be and the same is hereby in all particulars affirmed." The defendant A. C. L. R. R. Co. appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Murray Allen and Thos. W. Davis for defendant.*

CLARK, C. J. The Atlantic Coast Line Railroad excepts upon the ground that the Montgomery Lumber Company Railroad is not such a common carrier that the Corporation Commission had authority to establish and compel the putting into effect joint rates between it and the A. C. L. Railroad.

In this case the joint rates are established for only one commodity, crushed stone, etc., a product of the Raleigh Granite Company's plant

near Rolesville. The Corporation Commission, 21 March, 1916, upon the application of said Montgomery Lumber Company, authorized it to carry freight and passengers and charge therefor, and the order then made was as follows: "Ordered by the Corporation Commission that the said Montgomery Lumber Company be and it is hereby authorized to transport over and upon its said logging road all kinds of commodities other than its own, except sawed logs, and also passengers, and to charge therefor the rates in accordance with freight tariff and classification and passenger tariff, which has this day been approved by the Commission for this line of road, subject to such changes and modifications as may from time to time be made or approved by this Commission."

It is quite clear that the State has authority to declare a lumber company railroad, such as that figuring in this case, a common carrier upon its own application. In *U. S. v. R. R.,* 234 U. S., at p. 24, it is said: "It is insisted that these roads are not carriers because the most of their traffic is in their own logs and lumber, and that only a small part of the traffic carried is the property of others. But this conclusion loses sight of the principle that the extent to which a railroad is in fact used does not determine the fact whether it is or is not a common carrier. It is the right of the public to use the road's facilities and to demand service of it, rather than the extent of its business, which is the real criterion determinative of its character."

In this case the Montgomery Lumber Company Railroad, on its own application, under C. S., 1039, was created a limited public carrier by order of the Corporation Commission, 21 March, 1916, above set out. It is 27 miles long, substantially built, and well equipped in the manner set out by the findings in this case. The Commission was acting for the State through its prescribed machinery in accepting the Montgomery Lumber Company Railroad as a common carrier and imposing upon it, with its consent, the duties, privileges and liabilities of such relation to the public. It makes no difference that under the original charter of the lumber company railroad it did not have authority to act as a common carrier or to exercise the power of eminent domain. The question before us is, this company having been made a common carrier under authority of the statute of this State, did the Corporation Commission have authority to make joint rates set out?

C. S., 1071, is as follows: *"Authority to make joint rates.*—The Commission shall, from time to time, and as often as circumstances may require, change and revise or cause to be changed and revised any schedule of rates fixed by the Commission or allowed to be charged by any carrier of freight, passengers or express, or by any telegraph or telephone company. The powers of the Commission, under this sec-

tion, shall be exercised with respect to railroad freight and passenger rates under the limitations prescribed by article 5 of this chapter and article 10 of the chapter entitled 'Railroads.' "

Article 5 herein referred to is chapter 20, Laws Extra Session 1913, and it limited the authority of the Corporation Commission as to increasing the maximum rates for freight carriers under that chapter. Indeed C. S., 1080, provides: "Except where the Corporation Commission shall order or has ordered to the contrary, the following specified rates are declared to be reasonable maximum rates to be charged by railroad companies owning, operating, controlling or maintaining 75 miles or more of railroad in North Carolina."

So far even as maximum rates are concerned the act of 1913 imposed no limitations upon the Corporation Commission for such rates on a railroad less than 75 miles long. Hence section 7 of the act of 1913, now C. S., 1083, expressly confers authority upon the Corporation Commission to investigate rates upon the request of any person directly interested. It permits that body to hear evidence as to the reasonableness of the maximum rates fixed by law or by the Commission and to establish such rates as it may deem just. The authority conferred upon the Commission is plenary.

On 21 March, 1916, the Commission, under the authority contained in C. S., 1039, ordered that the Montgomery Lumber Company Railroad should be a limited public carrier, and since that time it has been handling freight, both carload and less, locally between Spring Hope and points on its line, and charging therefor rates set out in the tariff filed with the approval of the Commission.

C. S., 1039, reads: "The Corporation Commission has power to authorize lumber companies having logging roads to transport all kinds of commodities other than their own, and passengers, and to charge therefor reasonable rates to be approved by the Commission."

The defendant contends, however, that the Corporation Commission did not have authority to make joint rates between a standard railroad company, such as the A. C. L., and a lumber road, which has no charter authority to act as a common carrier or to exercise the power of eminent domain.

The only question for us to consider, however, is the authority of the Corporation Commission to authorize the lumber company to act as a common carrier, which authority is clear upon the above-recited statutes and the facts found by the court.

The Court has held that the expression in C. S., 3465—the Fellow-Servant Act—that "any railroad company operating in this State" is broad enough to include lumber roads. *Hemphill v. Lumber Co.,* 141 N. C., 487. This ruling of the Supreme Court was approved 16 times

CORPORATION COMMISSION EX REL. GRANITE CO. *v.* R. R.

between *Hemphill's case* and *Goodman v. Power Co.*, 174 N. C., 661. While it is true that the Court in *Williams v. Mfg. Co.*, 175 N. C., 226, held that the comparative negligence statute, C. S., 3467 to 3469, inclusive, did not apply to lumber roads on account of the peculiar wording of the act—"common carrier by railroad"—but the General Assembly of 1919, in consequence of this decision, extended these sections to apply to logging roads and tram roads. C. S., 3470.

The Raleigh Granite Company is a newly opened and extensive bed of granite, the transportation of which at reasonable rates is a matter of public interest to the State Highway Commission and all engaged under its contracts. Prior to the order of the Corporation Commission of 7 August, 1923, which is here appealed from, the shipment of granite over the Montgomery Lumber Company's road had to pay two full charges: one from the quarry to the terminus of the Spring Hope branch of the Coast Line and the other over the Coast Line Railroad. In prescribing joint rates which the Commission was authorized to do, there was a market made for this granite in competition with granite from other quarries. If deprived entirely of this competition by lack of reasonable rates which the Corporation Commission was authorized to fix, it was entirely possible that this growing industry might have been choked off and bought out by some competing quarry or be so bottled up as to be unremunerative. It is for this very reason that the Corporation Commission was authorized to make the order imposing joint rates, and in this action the Court has reviewed the evidence at length and affirmed that ruling. There are very many cases in the Public Utilities Reports which throw light on the subject: *Public Utilities Co. v. R. R.*, P. U. R., 1915-A, p. 10, which compelled a standard railroad to make joint rates with a terminal railroad.

*Tarpey v. Sou. Pacific Ry.*, P. U. R., 1915-D, p. 621, which required a standard railway to make joint rates with an automobile stage line.

*State Normal School v. R. R.*, P. U. R., 1918-D, p. 537, which adjudged that a standard railway company should make joint rates with a street railway. See, also, the *Tap Line cases*, 234 U. S., pp. 1 and 36, and 240 U. S., p. 295.

This case is one of great public interest, as upon the authority to fix joint and reasonable rates for their output depends the ultimate success of this enterprise, which will become in all probability a large contributor towards the extension of our State Highway system and great quarry for building and other purposes.

His Honor has reviewed and passed upon the findings of fact and of law of the Corporation Commission and has affirmed the same, and upon full consideration this action is

Affirmed.